**FILED & ENTERED**

**JUN 21 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY milano     DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Ashley Susan Aarons,<br><br><div align="right">Debtor(s)</div> | Case No.:     2:19-bk-18316-NB<br><br>Chapter:     7 |
| Ashley Aarons Trustee of The Ashley Aarons 2015 Trust,<br><br><div align="right">Plaintiff(s)</div><br>v.<br><br>Lexington Insurance Company,<br><br><div align="right">Defendant(s)</div> | Adv. No.:     2:24-ap-01075-NB<br><br>**MEMORANDUM DECISION DENYING PLAINTIFF/DEBTOR'S MOTION FOR RELIEF FROM JUDGMENT**<br><br>Hearings:<br>Date:  April 2, 2024 & April 30, 2024<br>Time:  11:00 a.m.<br>Place: Courtroom 1545<br>       255 E. Temple Street<br>       Los Angeles, CA 90012<br>(and via ZoomGov per posted Procedures) |

For the reasons set forth below, this memorandum decision denies the motion of the above-captioned Plaintiff/Debtor ("Debtor") for "Relief from the Judgment Pursuant to FRCP Rule 60(b)" (adv. dkt. 27, the "Reconsideration Motion").  Defendant Lexington Insurance Company ("Lexington") is directed to lodge a proposed order implementing this Memorandum Decision.

## 1. BACKGROUND

Ashley Susan Aarons ("Debtor") filed a chapter 11 petition for bankruptcy relief on July 19, 2019 (the "Petition Date").  This Bankruptcy Court entered an order converting the case to chapter 7 on October 18, 2021 (the "Conversion Date").  *See* Order (bankr. dkt. 464).  On the same date, David M. Goodrich was appointed as the Chapter 7 Trustee ("Trustee").  Bankr. dkt. 465.

Prior to the Conversion Date, Debtor had filed a complaint ("Complaint") against Lexington in the Los Angeles Superior Court (case number 20STCV42487) asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing (the "Lexington Action").  On April 14, 2021 (also prior to the Conversion Date), Lexington had removed that action to the United States District Court for the Central District of California and the case was assigned to District Judge Stephen V. Wilson (case number 2:21-cv-03200-SVW-AGR).

The Lexington Action involves a homeowner insurance policy issued by Lexington to Debtor for property located at 984 Bel Air Road, Los Angeles, CA 90077 (the "Property") (adv. dkt. 1, Ex. B., para. 6).  Debtor alleges that on January 10, 2017, the Property incurred water intrusion damage from a storm (*id.,* para. 10); on May 26, 2018, a balcony on the Property collapsed (*id.,* para. 39 *and* bankr. dkt. 565, Ex. 1, Recital 2.4); and Lexington purportedly did not adequately compensate her for the damage to the Property.  *See* Complaint (adv. dkt. 1)*,* generally.

Following Trustee's appointment, Lexington and Trustee engaged in settlement negotiations and participated in a mediation on July 29, 2022, and on September 15, 2022, Trustee filed a motion to approve a settlement with Lexington.  *See* Settlement Motion (bankr. dkt. 565), p. 4:1-5.  Debtor filed a limited opposition to the Settlement Motion (bankr. dkt. 583) "to the extent [the Settlement Motion] seeks to resolve [...] post-conversion claims and/or resolve any liability that the estate does not own and which are owned by Debtor."  *Id.,* p. 2:4-6.

After a hearing this Bankruptcy Court issued an order (bankr. dkt. 604) granting

the Settlement Motion.  That Order provides, in relevant part:

> The Trustee is authorized to accept $250,000.00 from Lexington Insurance
> Company ("Lexington"), together with the release in paragraph 5.2 of the
> Settlement Agreement in exchange for a release of **any and all claims that
> the Trustee has the power to settle** and that are within the broad scope of
> the release in paragraph 5.1 of the Settlement Agreement.  Those claims
> include, but are not limited to, the claims that were asserted by Debtor before
> this case was converted to chapter 7, and that subsequently were held by the
> Trustee on behalf of the bankruptcy estate, against Lexington in the lawsuit
> styled *Ashley Aarons, Trustee of the Ashley Aarons 2015 Trust v. Lexington
> Insurance Company and Does 1 to 25, Inclusive,* United States District Court
> for the Central District of California Case No. 2:21-cv-03200-SVW-AGR.  This
> Court takes no position whether, as asserted by Debtor, there might be post-
> conversion claims by Debtor that are beyond the scope of what the Trustee
> has the power to settle, except as follows. First, nothing in this order should
> be interpreted to mean that Debtor can "have it both ways" and assert claims
> against Lexington but enforce the release by Lexington of claims against her
> in paragraph 5.2 – this Court expresses no opinion on that issue.  Second,
> nothing in this order should be interpreted to insulate Debtor from the "return
> to the fray" doctrine or any similar doctrine.  *See generally In re Moser*, 613
> B.R. 721 (9th Cir. BAP 2020).  [Order (bankr. dkt. 604), p. 2:8-23 (emphasis
> in original)]

Pursuant to the settlement, the Lexington Action was dismissed on December

14, 2022.[1]  **Over a year later,** on December 20, 2023, Debtor filed the Reconsideration

Motion seeking relief under Civil Rule 60(b)(1) (mistake and/or surprise), (3) (fraud) &

(4) (void judgment).  Lexington timely filed an opposition (adv. dkt. 31).  There is no

reply, nor are there any other papers properly presented on this matter (apart from any

papers subject to judicial notice).[2]

---

[1] The dismissal occurred by stipulation (adv. dkt. 25) between Trustee and Lexington, pursuant to Rule
41(a)(1)(A)(ii) (Fed. R. Civ. P.).  A procedural twist is that the stipulation for dismissal occurred before this
Bankruptcy Court had granted the Settlement Motion, but the timing (before formal approval of this Court
instead of afterwards) has not been shown to make any difference.  Meanwhile, based on the stipulation
for dismissal, the District Court vacated all previously set dates and took the matter off calendar.  Adv.
dkt. 26.

[2] Debtor did not timely file a reply but instead filed a motion to extend the deadline to file her reply (adv.
dkt. 35) which was denied by District Judge Wilson (adv. dkt. 36).  An untimely opposition (adv. dkt. 37) to
the Reconsideration Motion was filed by David J. Furtado, the attorney who had helped to obtain the
settlement and had been prosecuting the Lexington Action – initially for Debtor and her trust, and later for
Trustee.  Mr. Furtado also filed a motion (adv. dkt. 39) requesting a retroactive extension of the deadline
for filing and serving any opposition.  That, too, was denied by District Judge Wilson (adv. dkt. 42).

1
2
3
4
5
6
7

On March 4, 2024, Judge Wilson issued a minute order (adv. dkt. 44) referring the Reconsideration Motion to this Bankruptcy Court for determination.  On March 20, 2024, this Bankruptcy Court issued an order (adv. dkt. 45) setting a status conference for April 2, 2024, at 11:00 a.m.  Debtor appeared at that status conference but counsel for Defendant Lexington did not.  This Court continued the status conference to the above-captioned date and time, at which time counsel for both parties appeared (other appearances are as noted on the record).

8
9
10
11

This Court was informed at the continued status conference that Lexington had failed to appear at the April 2 status conference due to a miscommunication after its prior counsel had retired.  At the conclusion of the continued status conference this Court took this matter under submission.

12

**2.  JURISDICTION, AUTHORITY, AND VENUE**

13
14
15
16
17
18
19

This Bankruptcy Court has jurisdiction, and venue is proper, under 28 U.S.C. §§ 1334 and 1408. [3]  This Bankruptcy Court interprets District Judge Wilson's minute order (adv. dkt. 44) as a direction to this Bankruptcy Court to issue a *final* order resolving this proceeding (if possible) – as distinguished from burdening the District Court by making only *proposed* findings of fact and conclusions of law (a/k/a a "report and recommendation") and sending this matter back to the District Court.  *See* 28 U.S.C. § 157(c)(1) and Rule 9033 (Fed. R. Bankr. P.).

20
21
22
23

This Bankruptcy Court also concludes that it has the statutory and Constitutional authority to issue a final order on the matters presented.  That is primarily because, as set forth in the Discussion section below, those matters can be decided as a matter of law on the undisputed facts.  *See In re Healthcentral.com,* 504 F.3d 775 (9th Cir. 2007)

24
25
26
27
28

---

[3] Unless the context suggests otherwise, a "chapter" or "section" ("§") refers to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure or other federal or local rule, and other terms have the meanings provided in the Code, Rules, and the parties' filed papers.

1  *and In re AWTR Liquidation, Inc.,* 547 B.R. 831, 839 (Bankr. C.D. Cal. 2016)

2  (discussing *Stern v. Marshall*, 564 U.S. 462 (2011), and related authority).[4]

3      Alternatively, this Court requests that this Memorandum Decision be treated as

4  "proposed findings of fact and conclusions of law" (28 U.S.C. § 157(c)(1)) if (a) it turns

5  out that this Bankruptcy Court has misinterpreted District Judge Wilson's minute order,

6  or lacks statutory or Constitutional authority to issue a final order, and (b) if the parties

7  were to be held not to have waived or forfeited any arguments regarding the scope of

8  this Bankruptcy Court's authority to issue a final order.  *See generally Wellness Intern.*

9  *Network, Ltd. v. Sharif,* 575 U.S. 665 (2015).  Again, however, this Bankruptcy Court

10 believes that it has both the authority and the direction from District Judge Wilson to

11 issue a final order.

12     Having addressed these preliminary issues, this Court now turns to the merits of

13 the parties' current disputes.

14 **3.  DISCUSSION**

15     **a.  Legal Standards**

16     To obtain relief under Rule 60(b) (Fed. R. Civ. P.), the movant must show that

17 one of the following specific grounds applies:

18         (1) mistake, inadvertence, surprise, or excusable neglect;
19         (2) newly discovered evidence that, with reasonable diligence, could not have
           been discovered in time to move for a new trial under Rule 59(b);

20

---

21 [4] Alternatively, even if findings of fact were necessary, this Bankruptcy Court believes that it would have
22 authority to issue a final order or judgment because, as described below, the central issue in this litigation
   is whether a settlement by a chapter 7 bankruptcy trustee includes matters that accrued prior to
23 conversion to chapter 7 or that are sufficiently rooted in the pre-conversion past.  That issue is critical to
   "the liquidation of assets of the estate" and therefore this is a statutorily "core" proceeding.  28 U.S.C.
24 § 157(b)(2)(O).  *See AWTR,* 547 B.R. 831, 835 (interpreting statute).  In addition, because a bankruptcy
   settlement can only arise in bankruptcy, and could not be determined in a jury proceeding, it "stems from
25 the bankruptcy itself" and therefore is within this Bankruptcy Court's authority under the Constitution.  *Id.*
   at 833-36 (quoting *Stern,* 564 U.S. 462, 500).  In other words, although this Court presumes that the
26 *underlying* litigation is non-core – because it involves an insurance dispute between a chapter 7 debtor
   and a defendant (Lexington) that has not otherwise been involved in the bankruptcy case – nevertheless
27 a challenge to the scope of Trustee's *settlement* of that litigation is quintessentially a bankruptcy matter.
   In common sense terms, how would a jury be involved in deciding what claims were or were not settled
28 by a chapter 7 bankruptcy trustee's settlement approved by this Bankruptcy Court?

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.
[Rule 60(b) (Fed. R. Civ. P.)]

The text of the Reconsideration Motion does not specify which of the above-quoted reasons for reconsideration are at issue, but the motion's caption refers to "fraudulent misrepresentation and misconduct of opposing party" (reason "(3)"), "mistake" (reason "(1)"), "surprise" (reason "(1)"), and "void judgment" (reason "(4)"). Rule 60(c) states that any "motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order of the date of the proceeding."

Reconsideration under rule 60(b) "is an extraordinary remedy which should be used sparingly." *Casey v. Albertson's Inc.,* 362 F.3d 1254 (9th Cir. 2004). A movant cannot use a Rule 60(b) motion to reargue points already made, or that could have been made, in dispute of the underlying motion. *In re Branam*, 226 B.R. 45, 55 (9th Cir. BAP 1998), *aff'd*, 205 F.3d 1350 (9th Cir. 1999).

**b. The Reconsideration Motion is untimely**

As set forth above, the stipulated dismissal of the Lexington Action occurred on December 14, 2022, and Debtor waited until over a year later, on December 20, 2023, to file her Reconsideration Motion. This delay means that all but one of Debtor's asserted reasons for reconsideration are barred by the plain text of Rule 60(c): any asserted "fraudulent misrepresentation and misconduct of opposing party" (reason "(3)"), "mistake" (reason "(1)"), or "surprise" (reason "(1)") is not a valid reason because any such reasons must be asserted "no more than a year" (Rule 60(c)) after the stipulated dismissal.

Debtor apparently asserts, based on the caption of the Reconsideration Motion, that the stipulated dismissal constitutes a "void judgment" (reason "(4)"). Assuming for

1 the sake of discussion that there might be some grounds for asserting that the dismissal

2 is "void" (which there are not[5]), Debtor also has the burden to show that she has

3 asserted this reason within a "reasonable time."  Rule 60(c).

4        Debtor has offered no excuse at all for waiting over a year after the Lexington

5 Action was dismissed to seek reconsideration.  To the contrary, she admits that she

6 knew immediately about that dismissal and disputed it: she emailed the attorney

7 handling that litigation, Mr. Furtado, the same night as the stipulated dismissal was filed,

8 objecting that he had "no authority to release my post-conversion claims against

9 Lexington."  12/14/22 email (Ex. 15 to Reconsideration Motion, at PDF p. 222).

10        This Court concludes that Debtor has not sought reconsideration within a

11 reasonable time.  For this reason alone the Reconsideration Motion must be denied.

12 Alternatively, the Reconsideration Motion must be denied on the merits, for the reasons

13 set forth below.

14       **c. Trustee had authority to dismiss the Complaint with prejudice**

15        Debtor's primary argument is that Trustee was not authorized to stipulate to

16 dismissal of the Complaint with prejudice, because not all claims asserted in the

17 Complaint are owned by the estate.  According to Debtor, some claims against

18 Lexington accrued after conversion of her chapter 11 case to chapter 7, and such post-

19 conversion claims are owned by Debtor, not the estate.  *See, e.g.*, Reconsideration

20 Motion (adv. dkt. 27) p. 11:18-21 ("I still have claims against Lexington for conduct after

21 conversion to Chapter 7 that are not included in the approved settlement") (quoting prior

22 communication); *id.* p. 12:16-20 ("the pre-conversion claims … are the only claims that

23 the Chapter 7 Trustee has authority to settle").

24

25 _____

26 [5] Debtor does not explain why the stipulated dismissal allegedly is "void," but implicitly any voidness is
based on her other arguments.  She asserts that Trustee acted beyond his authority (which this Court
rejects below), and that Mr. Furtado and Lexington committed a fraud on the District Court (which this

27 Court also rejects below).  For present purposes the only point is that Debtor appears to seek
reconsideration under Rule 60(b)(4), and Debtor has the burden to show that she has sought

28 reconsideration within a "reasonable time."  Rule 60(c).

1  This Court disagrees.  All of the claims at issue belonged to the bankruptcy

2  estate, and Trustee was authorized to settle them and dismiss the Lexington Action with

3  prejudice.

4  **(i) The subject claims were property of the estate under §§ 541(a)(1)**

5  **and 1115(a)(1)**

6  An explanation of what is **not** in dispute provides context for an analysis of

7  Debtor's arguments.  The filing of Debtor's chapter 11 petition on the Petition Date (July

8  19, 2019) created an estate comprised of various property, including "all legal or

9  equitable interests of the debtor in property as of the commencement of the case."

10  § 541(a)(1).  In addition, because Debtor is an individual, property of her estate also

11  includes "all property of the kind specified in section 541 that the debtor acquires after

12  the commencement of the case but *before* the case is … *converted* to a case under

13  chapter 7 …."  § 1115(a)(1) (emphasis added).  Therefore, to the extent that Debtor's

14  claims against Lexington accrued prior to the conversion of the case to chapter 7, such

15  claims would constitute property of Debtor's estate belonging solely to Trustee.

16  Debtor apparently asserts that her claims accrued post-conversion because,

17  although the water intrusion and balcony collapse occurred prepetition and pre-

18  conversion, Lexington's handling of that claim may have included allegedly wrongful

19  acts or omissions both pre- and post-conversion.   Debtor's arguments fail both factually

20  and legally.

21  **(A) Debtor fails to allege specific post-conversion wrongdoing**

22  Factually, as Lexington argues (Opp., adv. dkt. 31, p. 4:13-22), all of the matters

23  about which Debtor specifically complains appear to pre-date the conversion to chapter

24  7.  She makes only vague allegations that there was some sort of generic post-

25  conversion wrongdoing, such as alleging that Lexington engaged in "post-conversion …

26  *bad faith*" by "*creating irreparable harm* to [Debtor] and to her father."  Reconsideration

27  Motion (adv. dkt. 27), p. 9.

28

1  Such vague allegations are insufficient.  Debtor fails to specify what the alleged

2  bad-faith conduct was, what acts or omissions were responsible for "creating" harm, or

3  when those things occurred.  This, by itself, is an independent reason why Debtor's

4  argument about Trustee's authority to settle the claims must be rejected.

5  **(B) Alternatively, any alleged post-conversion wrongdoing by**

6  **Lexington was necessarily part of the overall insurance dispute, which arose pre-**

7  **conversion**

8  As a legal matter, even supposing that there were some disputes with Lexington

9  post-conversion (which, so far as the record before this Court reveals, there were not),

10  such post-conversion disputes are inseparable from the pre-conversion claims.  The

11  legal analysis starts with applicable State law, as explained by the Bankruptcy Appellate

12  Panel for the Ninth Circuit (the "BAP") (*In re Goldstein*, 526 B.R. 13, 21 (9th Cir. BAP

13  2015)):

14  "To determine when a cause of action accrues, and therefore
15  whether it accrued pre-bankruptcy [or, in this case, pre-conversion[6]] and is
    an estate asset, the Court looks to state law."  *Boland v. Crum (In re*
16  *Brown),* 363 B.R. 591, 605 (Bankr.D.Mont.2007) (citing *Cusano* [*v. Klein*,
    264 F.3d 936, 947 (9th Cir. 2001]). …

17  It is not entirely clear which State's law applies (the parties' papers do not include

18  a copy of the insurance policy), but it appears that California law governs because the

19  Property is in California and insurance is heavily regulated by California law.  *See, e.g.,*

20  Settlement Agreement p. 7 ¶ 19 (Ex. 1 to Settlement Motion, dkt. 565).  In any event,

21  the parties have not argued that any different law applies, or that the substance of any

22

23  _____

24  [6] *Goldstein* examined accrual in the context of a case which had **not** been converted from one chapter of
    the Bankruptcy Code to another.  Thus, *Goldstein* relied upon the petition date as the cutoff for
25  determining whether a cause of action had accrued and therefore constituted estate property.  As noted
    above, in a case converted from chapter 11 to chapter 7, as a result of § 1115(a)(1), a debtor's property
26  acquired after commencement of the case but prior to conversion becomes property of the estate.  In
    such cases, the conversion date, not the petition date, is the relevant cutoff date for assessing whether a
27  cause of action has accrued and therefore constitutes estate property.  Notwithstanding this distinction
    arising from the operation of § 1115(a)(1), the underlying reasoning of *Goldstein* and similar authorities
28  still applies.

other State's law would be materially different, so this Court relies on the BAP's

summary of California law:

> In California, "generally, a cause of action accrues … **when a suit may be maintained**.  Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not accrue until the party owning it is entitled to begin and prosecute an action thereon.  In other words, a cause of action accrues upon the occurrence of the last element **essential** to the cause of action."  *Howard Jarvis Taxpayers Assn. v. City of La Habra,* 25 Cal.4th 809, 815, 107 Cal.Rptr.2d 369, 23 P.3d 601 (2001) (citations and internal quotation marks omitted).  Therefore, if a claim "could have been brought," it has accrued. *Cusano,* 264 F.3d at 947. [*Goldstein,* 526 B.R. 13, 21 (emphasis added).[7]]

Under this test, Debtor has not established that her claims accrued post-

conversion.  Debtor provides no legal analysis of this issue, and as noted above she

fails to point to any specific disputes with Lexington that arose post-conversion.  But for

the sake of discussion this Court considers the following partially-hypothetical factual

scenario.  This Court starts with the actual fact that Debtor sued Lexington pre-

conversion for (at the very least) declining some *coverage*.  One could suppose

hypothetically that post-conversion Lexington raised a new dispute about the *dollar*

*amount* of some alleged repair costs.

In Debtor's favor, this hypothetical scenario is specifically designed such that the

*scope* of coverage is somewhat different from the *dollar amount* of covered costs, so

that arguably (in Debtor's favor) there is some sort of meaningful difference between the

pre-conversion and post-conversion disputes in this scenario.  But both of these types

of insurance disputes arise from the same nexus of operative facts, namely the overall

dispute over how much Lexington must pay based on its insurance coverage of the

Property.

---

[7] It is important to distinguish when a cause of action "accrues" and when – often at some later point – the statute of limitations begins to run.  For example, a potential plaintiff typically would be legally able to sue as soon as all the elements of a breach of contract or tort claim have occurred; but if the injury has yet to be discovered then the statute of limitations might not start to run until later, when it is discovered.  *See, e.g., Goldstein,* 526 B.R. 13, 21 (distinguishing between accrual and statute of limitations); *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 & 1197-1202 (2013) (same).

To illustrate, Debtor could not bring one lawsuit contesting coverage and then later on file a whole new lawsuit based on claiming a larger dollar amount of repair costs than whatever Lexington was willing to pay.  Those two disputes are part of the same nexus of operative facts – the same overall claim as to insurance coverage.

Just like *Goldstein,* the fact that there were ongoing alleged wrongs does not change the accrual of the overall dispute.  In *Goldstein* a wrongful denial of a loan modification occurred "six months prepetition" (526 B.R. 13, 19 & n. 12); the debtors argued that the claims did not actually accrue until after the petition date because the lender "repeatedly told [the debtors]" that they should continue making payments (*id.*); but the BAP affirmed the bankruptcy court's ruling that the claims accrued prepetition, belonged to the bankruptcy estate, and could be settled by the bankruptcy trustee

Debtor's argument would also lead to an absurdity.  Under her approach, Trustee would own claims for the entire amount of damages arising from the water intrusion and balcony collapse claims, and yet Debtor would own overlapping claims that Lexington, for example, had under-paid for repairs arising from the same water intrusion.  It would make no sense to read the statute in a way that would create overlapping ownership of claims, which would effectively bar Trustee from ever settling with Lexington.

In sum, under §§ 541(a)(1) and 1115(a)(1) Debtor does not own any post-conversion claims.  Debtor's pre-conversion claims against Lexington for breach of contract and breach of the implied covenant of good faith and fair dealing encompass the entire insurance dispute, and Trustee was authorized to settle those claims and was within his rights to stipulate to dismissal of the Lexington Action with prejudice.

**(ii) Alternatively, the subject claims were property of the estate under §§ 541(a)(6)**

Under § 541(a)(6), "'[p]roceeds, product, offspring, rents, or profits of or from property of the estate' also belong to the bankruptcy estate." *Bercy v. City of Phoenix*, 103 F.4th 591, 595 (9th Cir. 2024).  This means that if a cause of action is "'sufficiently rooted in the prebankruptcy [or pre-conversion] past,'" that cause of action is property of

1    the estate – even if it is based in part upon acts or omissions occurring post-petition (or,

2    in this case, post-conversion).  *Id.* (citing *In re Ryerson*, 739 F.2d 1423, 1426 (9th Cir.

3    1984)).

4         This Court concludes that all of Debtor's allegations against Lexington are

5    sufficiently rooted in the pre-conversion past that they constitute estate property

6    belonging solely to Trustee.  Specifically, Debtor's claims against Lexington are based

7    upon Lexington's alleged failure to adequately reimburse Debtor for damages to the

8    Property resulting from a January 10, 2017, storm and a May 26, 2018, balcony

9    collapse.  These claims are firmly rooted in the pre-conversion past.

10        Debtor herself appears to acknowledge this at times.  For example, she alleges

11   that, "[d]ue to Lexington's bad faith and failure to adhere to the Chapter 11 Plan, the

12   Ashley S Aarons 2015 Trust did not receive the funds from the appraisal it should have

13   received to repair the home and get it refinanced timely **prior to October 15, 2021** [*i.e.,*

14   the Conversion Date] and therefore [the case] was involuntarily converted to a Chapter

15   7 bankruptcy …."  Reconsideration Motion (adv. dkt. 27), p. 7:19-24.

16        Debtor attempts to overcome this problem by vaguely alleging that Lexington is

17   liable for various post-conversion conduct.  But, as noted above, the Reconsideration

18   Motion does not allege with any specificity what wrongful acts or omissions Lexington

19   supposedly committed post-conversion.

20        Moreover, even if the Reconsideration Motion alleged some type of specific

21   conduct that Lexington engaged in post-conversion (it does not), Debtor still could not

22   overcome the reality that any post-conversion conduct Lexington could have engaged in

23   with respect to the insurance claims on the Property would still be inherently related

24   closely to the pre-conversion events.  In other words, any such alleged conduct is still

25   rooted firmly in the pre-conversion past because it all stems from the overarching

26   insurance dispute, and therefore all claims at issue are property of the estate, not

27   Debtor's property.

28

1

### (iii) Conclusion as to Trustee's authority

All of the claims at issue belonged to the bankruptcy estate.  Therefore, Trustee was authorized to settle all such claims, and dismiss the Lexington Action with prejudice.

### d. Debtor's other arguments lack merit

One allegation made by Debtor is that Mr. Furtado "misled the [District] court when he falsely stated that *[Debtor] agreed* to the terms and conditions of the settlement and that she released Lexington from their obligations, which is untrue …." Reconsideration Motion (adv. dkt. 27) pp. 10:28-11:4 (emphasis added).  This allegation appears to be part of her broader assertion (*id.* pp. 14:15-15:28 & Ex. 14) that Mr. Furtado and Lexington committed a fraud on the District Court (A) when Mr. Furtado signed the stipulation for voluntary dismissal of the Lexington Action *as "Attorney for Plaintiff Ashley Aarons*, Trustee of the Ashley Aarons 2015 Trust" (*id.,* Ex. 14 at PDF p. 220, emphasis added) and (B) when counsel for Lexington attested that "*all signatories listed*, and on whose behalf the [stipulated dismissal] is submitted, *concur* in the filing's content and have authorized the filing."  *Id.* (emphasis added).

True, it would have been more accurate for Mr. Furtado to clarify that he was signing on behalf of Trustee (acting for Debtor's bankruptcy estate), as the holder of all rights and interests that remained in the bankruptcy estate post-conversion to chapter 7. But that is clearly what he was doing.

It is also true that stipulating to dismissal of the Lexington Action *with prejudice* turned out to be too hasty, because this Bankruptcy Court's order approving the settlement only authorized settlement of "any and all claims that the Trustee has the power to settle."  Order (bankr. dkt. 604) p. 2:10.  But this Memorandum Decision has now concluded that Trustee did in fact have the power to settle all claims, so in fact Debtor does not have any surviving claims and therefore the Lexington Action was properly dismissed with prejudice.

1     Other arguments raised by Debtor include (i) that Mr. Furtado should have taken

2    steps to "re-open" the appraisal by Lexington because it allegedly "left out" the balcony

3    collapse (*id.* p. 9:7-11 & Ex. 8 at PDF pp. 178-79), and (ii) that Lexington committed

4    fraud on the District Court by purportedly leaving out the balcony collapse (*id.* pp. 13:20-

5    14:7).  But as Lexington explains, (x) its appraisal did not include the balcony collapse

6    because Lexington denied coverage for that claim, and (y) the settlement with Trustee

7    did expressly include the balcony collapse because that was one of the claims that

8    Trustee took over; and Lexington sought to settle all claims, not just those for which it

9    had accepted coverage.  *See* Opp. (adv. dkt. 31), pp. 2:1-12 & 4:13-22.

10    Moreover, Debtor cannot collaterally attack the merits of the settlement.  She

11    never appealed this Court's order (dkt. 604) granting the Settlement Motion.  She filed

12    only a limited opposition to the Settlement Motion and it says nothing about the

13    foregoing issues.  *See* Opp. *passim* (included in Ex. 10 to Reconsideration Motion, adv.

14    dkt. 27, at PDF pp. 195-96).

15    One more argument raised by Debtor is that Mr. Furtado breached a duty of

16    loyalty to her by representing Trustee in the Lexington Action, after Trustee succeeded

17    to the bankruptcy estate's rights in that action.  But, regardless of whether Mr. Furtado

18    represented Debtor or represented Trustee, his duty was the same: to assist the holder

19    of the claims against Lexington in attempting to maximize the net recovery from any

20    settlement, subject to a cost/benefit analysis of the risks of litigation and potential

21    recoveries.  *See, e.g., In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986).

22    Therefore, any continuing duty he had to Debtor appears to be entirely consistent with

23    his duty to the bankruptcy estate.

24    Moreover, supposing for the sake of discussion that Debtor could have grounds

25    for any malpractice claims against Mr. Furtado (which she has not established), that is

26    not a basis to reconsider the stipulated dismissal pursuant to a settlement that was

27    approved by this Court in an order that was not appealed.  Again, Debtor did not raise

28    this issue at the time, and she cannot collaterally attack the settlement.

In sum, Debtor's remaining arguments fail.  It is entirely appropriate that the Lexington Action was dismissed with prejudice, pursuant to the settlement that this Bankruptcy Court approved, because there are no claims that belong to Debtor instead of the bankruptcy estate.  Nor can Debtor use the Reconsideration Motion as a vehicle to attack the underlying settlement.

**4.  CONCLUSION**

For the reasons set forth above, the Reconsideration Motion will be DENIED by separate order.  Lexington is directed within seven days of the entry of this Memorandum Decision on the docket to lodge a proposed order and file and serve a notice of lodgment.

<div align="center">###</div>

Date: June 21, 2024

Neil W. Bason
United States Bankruptcy Judge